# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1537V
(to be published)

* * * * * * * * * * * * * * * * * * * * * * * * * *
|  |  |  |
|---|---|---|
| KRISTEN INIGUEZ, | * | |
| *K.J.I., by and through her mother*, | * | Chief Special Master Corcoran |
|  | * | |
|  | * | |
| Petitioner, | * | Filed: April 28, 2023 |
|  | * | |
| v. | * | |
|  | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
|  | * | |
| Respondent. | * | |
|  | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

*Lisa A. Roquemore*, Law Office of Lisa A. Roquemore, Rancho Santa Margarita, CA, for Petitioner.

*Benjamin P. Warder*, U.S. Department of Justice, Washington, DC, for Respondent.

### Decision Granting in Part Final Award of Attorney's Fees and Costs[1]

On October 4, 2018, Kristen Iniguez, on behalf of her minor daughter, K.J.I., filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleged that K.J.I. suffered a significant aggravation of alopecia areata

---

[1] Although I have not formally designated this Decision for publication, it will nevertheless be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet**. In accordance with Vaccine Rule 18(b), Petitioner has fourteen days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access. Otherwise, the whole Decision will be available to the public.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

("AA") as a result of receiving a tetanus, diphtheria, and acellular pertussis ("Tdap") vaccine on May 8, 2017. A hearing had been scheduled for April 25–26, 2022, but the parties successfully settled the case, and I issued a Decision Awarding Damages on July 26, 2022. *See* Damages Decision, dated July 26, 2022 (ECF No. 70). As the Damages Decision indicates, Petitioner received a lump sum award of $10,000.00.

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated Nov. 8, 2022 (ECF No. 74) ("Mot."). This is the first fees request made in the case's life. Petitioner requests a total of $122,892.46 in attorney's fees and costs ($99,043.60 in fees, plus $23,848.86 in costs) for the work of attorney, Ms. Lisa Roquemore and her paralegal for the work performed from June 2018 to November 2022. Mot. at 2. The requested costs also include Petitioner's unreimbursed litigation costs incurred in this matter, plus the services of Attorney Suzanne P. Nicholl for establishing a guardianship. *Id*.

Respondent reacted to the fees request on November 21, 2022. *See* Response, dated Nov. 21, 2022 (ECF No. 76) ("Resp."). Respondent is satisfied that the statutory requirements for an attorney's fees and costs award are met in this case, and otherwise defers the calculation of the amount to be awarded to my discretion. *Id*. at 2–3.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's motion, awarding fees and costs in the total amount of **$108,035.92**.

## ANALYSIS

### I. Legal Standard Applicable to Fees and Costs Requests

The Vaccine Act permits an award of *reasonable* attorney's fees and costs to successful petitioners. Section 15(e). A fees and costs request must include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The petitioner "bears the burden of establishing the hours expended, the rates charged, and the expenses incurred." *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1991). The petitioner "should present adequate proof [of the attorney's fees and costs sought] at the time of the submission." *Id*. at 484 n.1. Petitioner's counsel "should make a good faith effort to exclude from a fees request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S., at 434.

One thing is abundantly clear from all of the above: although the Act requires fees to be awarded in successful cases, the amount must still be *reasonable*. Section 15(e)(1)(A). And special masters are tasked with the exercise of their discretion in evaluating reasonableness. Indeed, a special master may reduce a fee request *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 209 (2009); *see also Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994) (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs). A special master also need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011).

Special masters have two *nonexclusive* means for reducing fees based on determinations that attorney time devoted to a matter was not reasonable—and both can be employed simultaneously. First, they may make targeted and specific reductions in time based on objectionable time entries or categories that they identify in an attorney invoice or larger fee request. For example, "unreasonably duplicative" billing entries are grounds for a fees reduction specific to the task involved. *See, e.g., Raymo v. Sec'y of Health & Hum. Servs.*, 129 Fed. Cl. 691, 703 (2016). In addition, special masters may make reductions for attorney time spent on matters not chargeable to the Program (such as time spent becoming admitted to the Court of Federal Claims, or the cost of bar admission). *See e.g., Brevig v. Sec'y of Health & Hum. Servs.*, No. 19-1635V, 2022 WL 628450, at *4 (Fed. Cl. Spec. Mstr. Jan. 31, 2022).

Second, special masters may deem time spent on a matter more *generally* to be excessive, given the nature of a particular claim or its overall history. While sometimes that determination may be achieved through parsing the billing invoices in minute detail (such as observing how much time was spent on a specific motion that should have taken less time), reductions of this kind may *also* reflect a special master's reasoned sense that the overall bill is simply not commensurate with the work performed. A claim that was resolved within a year of filing, for example, involving a modest injury would not warrant fifteen or twenty-hour days billed to it, regardless of the reasonableness of the attorney's hourly rate or personal good faith in seeking the best outcome possible.

Otherwise, determining what a reasonable fee award should be involves application of the lodestar method—"multiplying the number of hours reasonably expended[3] on the litigation times

---

[3] An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008); *Rodriguez v. Sec'y of Health & Hum. Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, D.C., for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 205–06 (2009). This reasonableness inquiry involves consideration of the work performed on the matter, the skill

a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take other relevant factors into consideration. *Id*. at 1348; *Raymo*, 129 Fed. Cl. at 703 (finding special masters may reduce fees paid to petitioners due to "excessive billing"). This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley*, 461 U.S. at 429–37 (1983).

**II.    Requested Fees**

The question of the proper hourly rates to be applied in this matter can be easily resolved. I have previously found that Ms. Roquemore, who practices in Southern California, is entitled to the forum rates set forth in *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). *See, e.g.*, *Davis v. Sec'y of Health & Hum. Servs.*, No. 14-978V, 2017 WL 656304, at *2 (Fed. Cl. Spec. Mstr. Jan. 23, 2017); *Taylor v. Sec'y of Health & Hum. Servs.*, No. 14-861V, 2016 WL 5390169 (Fed. Cl. Spec. Mstr. Sept. 2, 2016); *Raicevic v. Sec'y of Health & Hum. Servs.*, No. 14-554V, 2016 WL 5362695 (Fed. Cl. Spec. Mstr. Aug. 31, 2016). And the specific rates requested herein are consistent with what Ms. Roquemore and her paralegal have been awarded in past Program decisions (as well as with the OSM forum rate fee schedules).[4] *See, e.g.*, *A.P. v. Sec'y of Health & Human Servs.*, No. 14-894V, 2018 WL 3991358 (Fed. Cl. Spec. Mstr. July 17, 2018) (finding Ms. Roquemore's requested rate of $409 for work performed in 2018 to be reasonable); *Grow v. Sec'y of Health & Hum. Servs.*, No. 16-013V, 2021 WL 1972427, at *2 (Fed. Cl. Spec. Mstr. Apr. 16, 2021) (approving Ms. Roquemore's requested hourly rate of $421.00 for work performed in 2019 and 2020); *Stefano v. Sec'y of Health & Hum. Servs.*, No. 19-898V, 2021 WL 1186511, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2021) (finding Ms. Roquemore's requested rate of $447.00 for work performed in 2021 to be reasonable). Accordingly, I will apply all requested rates to the time devoted to this matter.

The second issue, however—whether the total amount of work performed on the matter was reasonable—presents a more difficult question. Because there is a chasm-wide gap between the amount this case settled for and the fees generated to produce that extremely modest outcome.

As the invoices filed with this case (totaling 95 pages) reveal, counsel began work on the matter in June 2018, incurring over $12,000.00 in fees even prior to the Petition's initiation in October 2018. *See generally* Invoice, filed as Ex. 2 (ECF No. 74-2), at 1–10. Although by the date of filing the product of this work was merely a seven-page petition, counsel had clearly delved

---

and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983).

[4] *See* Office of Special Masters Hourly Rate Fee Schedule: 2015-2018, http://www.uscfc.uscourts.gov/node/2914 (last accessed on Apr. 28, 2023).

deeply into the case (as reflected in the factual detail set forth therein), and had even begun the process of consulting with an expert, Dr. Gershwin, whose report was filed not long after. Thus, although this sum is somewhat large, it is not unreasonable for attorneys to "front load" some work, especially if a matter is anticipated to be complex. Indeed, the initiation of a case with expert support is a practice that should occur more often in Vaccine Program cases.

Thereafter, however, the billing invoices reveal several specific instances of overbilling. For example, the invoices record occasions on which counsel billed for excessive communication with her client. [5] Ms. Roquemore billed a combined 42.8 hours of her total 199.7 hours spent on the case for emails and telephone calls with Petitioner. *See generally* Mot. at Ex. 2. While I acknowledge that client communication is an important aspect of representation, the number of emails and phone calls exchanged between Ms. Roquemore and Petitioner exceeds what would be reasonable in a Vaccine Program case.

In addition, the attorney invoices demonstrate that Ms. Roquemore frequently sent drafts of her motions and briefs to both Ms. Iniguez and Dr. Gershwin for their review and suggested edits before filing them.[6] This resulted in several distinct, but arguably-inefficient phases of attorney time devoted to the same general task: Ms. Roquemore billed separately for (a) time spent drafting the document, (b) sending the document to Petitioner and/or Dr. Gershwin, (c) receiving the document with edits from them, (d) revising the document again, and (e) filing it. For example,

- On May 20, 2019, Ms. Roquemore billed 2.6 hours for reviewing Respondent's reports and drafting an email to Petitioner inquiring about any comments she might have regarding Respondent's reports. Ex. 2 at 25. A few days later, on May 23, 2019, Ms. Roquemore billed 3 additional hours for reviewing Petitioner's comments, drafting and reviewing additional emails from both Petitioner and Dr. Gershwin regarding their thoughts and comments on various aspects of the case, and reviewing Respondent's expert report and medical literature. *Id*.

- On March 2, 2022, Ms. Roquemore billed 3.5 hours finalizing a draft of Petitioner's Reply Brief, and 3.4 hours drafting Petitioner's Supplemental Declaration. Ex. 2 at 74. She then billed time for drafting an email to Petitioner "regarding declaration and draft reply for her [r]eview and comments." *Id*. The next day, on March 3, 2022, Ms. Roquemore again billed for time revising the Reply Brief, reviewing an email from Petitioner with her comments regarding her Supplemental Declaration, revising Petitioner's Supplemental Declaration, and drafting an email to Dr.

---

[5] *See* Mot., Ex. 2 at 1, 4–5, 16–17, 35, 37; 58–61; 72–74.

[6] *See* Mot., Ex. 2 at 5, 9, 16, 25, 29, 74–77.

5

Gershwin requesting his comments on the Reply Brief. *Id*. at 75. On March 4, 2022, Ms. Roquemore again billed time for reviewing an email from Dr. Gershwin with his proposed revisions, making another round of revisions to Petitioner's Supplemental Declaration, and revising and finalizing the Reply Brief. *Id*.

But focus on such specific examples of overbilling obscures the real issue presented by the present motion—which seeks a nearly six figure sum for attorney time alone. Was this time well spent? On the one hand, the matter was scheduled to go to trial, and there was a possibility of a large award therein.[7] In addition, the case involved the input of three experts in total (one for Petitioner, two for Respondent), and the parties only took concrete steps toward settlement after prehearing briefing had been accomplished, suggesting that counsel's work on the matter aided the claim's resolution. *See* ECF Nos. 51–67. But on the other hand, Petitioner was comfortable receiving a facially *modest* amount in settlement—*less* than counsel billed to the matter before the case had even been initiated. The fact that this sum was deemed satisfactory to the Petitioner, after all of counsel's efforts, strongly suggests that some of those efforts were misplaced (for it is likely the claim could have been resolved even sooner, and with less attorney effort, if Petitioner was willing to resolve the case for such an amount).

This motion thus presents a dilemma: *should Vaccine Program counsel receive fees vastly in excess of what their client receives in damages*? I am mindful of the fact that successful petitioners are *entitled* to fees as a general matter, and that a policy purpose of the Act's fee-shifting provision is to guarantee the availability of counsel to represent individuals who believe they may have been injured by a vaccine. I am also aware that attorney work on a matter may be based on an anticipated outcome that does not materialize, and that parties often opt to settle a case for sums that are not representative of what they might achieve at trial. Indeed, the Program routinely pays attorneys for work performed in unsuccessful cases, where *no* compensation was awarded, thus taking into account the Program's intent to make this forum available to claimants.

At the same time, the disparity between fees and award in this case cannot simply be swept under the carpet. Only *reasonable* fees should be awarded—and success in a matter does not mean reasonability has been established. Extreme examples come to mind (say, an award of $10,000.00 in a case with fees and costs exceeding one million dollars) that would readily be found *unreasonable*, even though the petitioner literally "succeeded." It is also not likely that a client

---

[7] In a somewhat comparable case also involving alopecia in a minor (albeit where no hair loss had previously manifested), a petitioner who proved entitlement to damages after hearing ultimately received in excess of $250,000 in damages (including pain and suffering) plus future care costs to be satisfied out of an annuity. *DeLozier, next friend of L.T. v. Sec'y of Health & Hum. Servs.*, No. 15-124V, 2022 WL 4281717 (Fed. Cl. Aug. 22, 2022).

responsible for paying an attorney directly would accept fees ten times larger than the amount obtained in damages.[8]

There is unfortunately little guiding precedent that can help resolve this issue. The Federal Circuit has noted in other contexts that judges are often imbued with the responsibilities of a fiduciary when determining the propriety of a fee award to be obtained from a preexisting fund. *See, e.g.*, *Health Republic Ins. Co. v. United States,* 58 F.4th 1365, 1377 and 1378 (Fed. Cir. 2023).[9] Such reasoning has some resonance here, where all damages and fees awarded in Program cases come from an independent source (the Vaccine Fund), and where the special masters are the first judicial officers tasked with evaluating amounts to be paid out of this source. "Looking the other way" would result in my paying counsel *ten times the amount* her client received in settlement—a potential misuse of the Fund.

At the same time, there are limits to what fees reductions the Court of Federal Claims will countenance, even when the cost incurred in pursuing a matter obviously exceeds damages awarded. *See, e.g.*, *Morse v. Sec'y of Health & Hum. Servs.*, 93 Fed. Cl. 780, 791 (2010) (vacating special master's determination to deny $11,000.00 in fees spent on motion for review that garnered claimant only $10,000.00). The *Morse* court in particular was not persuaded by a special master's invocation of "economic rationality" as grounds for denying fees, emphasizing instead that the necessity of attorney assistance was highly relevant at the threshold. *Morse,* 93 Fed. Cl. at 790 (deeming a proposed economic rationality test to have "no support in the binding precedent of this circuit governing cases brought under the Vaccine Act"). But *Morse* also allowed that "to be sure, the term 'reasonable attorneys' fees' in the Vaccine Act implies an exercise of billing judgment, as it is not proper for an attorney to bill a client for hours not needed to represent the client's interests." *Id.* at 790–91 (*citing Hensley,* 461 U.S. at 434).

Consideration of the foregoing leads me to conclude that while counsel's assistance in this matter was "necessary" to Petitioner, and fees are properly awarded, *the total sum requested* is unreasonable. It reflects a lack of billing judgment; nearly $100,000.00 in fees was not reasonably incurred in achieving the lower settlement sum awarded. Under such circumstances, attorneys should take a hard look at their bill, and modify the request before simply submitting invoices to the special master without comment. That did not occur here—and it is no excuse to invoke the Program's generous fee shifting provisions. For as I have often stated when ruling on fees requests,

---

[8] Similarly, in a contingency fee context, a personal injury attorney would not only receive a percentage of the sum awarded (and hence less than the total), but would be *aware* of this from the outset—and thereby likely calibrate the work performed on the matter to the anticipated outcome.

[9] The need to act in this fiduciary capacity has only increased since Respondent decided he would cease taking a position on the appropriate quantum of fees to be received by counsel (except when reasonable basis is at issue). *See, e.g.*, Resp. at 1 (representing that "[n]either the Vaccine Act nor Vaccine Rule 13 requires [r]espondent to file a response to a request by a petitioner for an award of attorney fees and costs").

7

*the Program does not exist for the benefit of attorneys*. *Dean on behalf of I.D. v. Sec'y of Health & Hum. Servs.*, No. 13-808V, 2015 WL 8001603, at *9 (Fed. Cl. Spec. Mstr. Nov. 12, 2015) (denying interim fee award; OSM does not "partner with counsel in ensuring the successful functioning of their business model—something that goes well beyond simply encouraging the availability of representation to successful petitioners, while also inviting inappropriate scrutiny into an attorney's financial management of his own practice" (citation omitted)). The goal of an available and competent bar is not undermined by taking care that attorneys do not receive a windfall for their efforts.

This is therefore precisely the kind of circumstances in which special masters should not be required to don the "green eyeshades" of an accountant, scrutinizing the nearly 95 pages of fees invoices for micro-nitpicks and small billing entries for adjustment. I shall instead employ a single, across-the-board reduction in fees to be awarded. I opt for a *fifteen percent reduction*—meaning after the core lodestar calculation of "rates x hours" is performed, the total amount to be awarded in fees in this case shall be reduced by **$14,856.54** (fifteen percent of $99,043.60). This reduction is quite modest under the circumstances, and I employ it after balancing counsel's right to a fees award against the other factors discussed above. It still results in counsel receiving *eight times* the total her client received, and reflects a "rough justice" calculation of what a more reasonable sum would be for representing Petitioner in this case.

In making this reduction, it is not my intent to penalize counsel specifically—especially since she did help Petitioner achieve success.[10] But it is also the case that Ms. Roquemore has previously been criticized in prior decisions for similar conduct. *See, e.g.*, *J.T. v. Sec'y of Health & Hum. Servs.*, No. 12-618V, 2018 WL 4623163 (Fed. Cl. Apr. 20, 2018) (finding that Ms. Roquemore billed for an excessive amount of time to complete several tasks); *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685, 2016 WL 909186 (Fed. Cl. Spec. Mstr. Feb. 17, 2016) (reducing Ms. Roquemore's billable hours due to excessive billing practices); *Brown v. Sec'y of Health & Hum. Servs.*, No 09-426, 2013 WL 1790212 (Fed. Cl. Spec. Mstr. Apr. 8, 2013) (finding that some of the hours billed by Ms. Roquemore were excessive and unreasonable). She cannot claim to be unaware of these issues. It is my hope that in future cases, she will take greater care in her fees requests—for I will likely employ more severe reductions if I again am presented with an attorney bill that is so grossly disproportionate to the amount the claimant received.

### III.  Requested Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira*, 27 Fed. Cl. at 34. Reasonable costs include the costs of obtaining

---

[10] Indeed, based on my experience with her work, I deem Ms. Roquemore to be conscientious and able in her representation of Vaccine Program claimants.

medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

The requested attorney's costs can be sorted into four different categories—typical litigation costs (including postage, shipping, and photocopying), expert costs, Petitioner's unreimbursed litigation costs, and costs associated with establishing a guardianship. The basic litigation costs in this matter total $909.07. Mot. at 2; ECF No. 74-4 at 1. Mailing and Distribution costs are also typical, and I do not find any of these costs unreasonable. Thus, they shall be awarded in full without reduction.

Next are expert costs. Petitioner requests a total of $14,125.00 for the work of M. Eric Gershwin, M.D. Mo. at 2; ECF No. 7409 at 1. Dr. Gershwin received a retainer of $2,500.00 and billed at a rate of $500.00 per hour for work performed in this case. This rate is consistent with what he has been awarded in past Program cases. *See, e.g.*, *Antalosky v. Sec'y of Health & Hum. Servs.*, No. 16-701V, 2022 WL 363916 (Fed. Cl. Spec. Mstr. Jan. 24, 2022); *Putman v. Sec'y of Health & Hum. Servs.*, No. 19-1921V, 2022 WL 2133979 (Fed. Cl. Spec. Mstr. May 12, 2022); *Le v. Sec'y of Health & Hum. Servs.*, No. 16-1078V, 2023 WL 2054467 (Fed. Cl. Spec. Mstr. Feb. 17, 2023). I find Dr. Gershwin's work on the matter (totaling 33.25 billed hours) to be reasonable in light of the case's overall progression. Dr. Gershwin is a qualified expert, and his work in this case was mostly helpful to the resolution of Petitioner's claim. I find that the amount of time billed to be reasonable as well.

Next are Petitioner's unreimbursed litigation costs. Petitioner requests a total of $3,800.68, including the filing fee, postage, the expert retainer fee, and costs associated with a guardianship investigation report. Mot. at 2; ECF No. 74-5; ECF No. 74-6. They were reasonably incurred and therefore are awarded in full.

Finally, Petitioner requests a total of $5,014.11 for the work of Attorney Suzanne P. Nicholl. Mot. at 2; ECF No. 75-8 at 5–7. Ms. Nicholl was retained by Petitioner to establish a guardianship as a requirement by Respondent pursuant to the conditions of settlement. Mot. at 2. Such costs are typical in Program cases, were reasonably incurred in this matter, and are thus eligible for reimbursement.

Accordingly, the total costs to be awarded to Petitioner's counsel is $20,048.18. Petitioner shall receive personal costs in the amount of $3,800.68.

**CONCLUSION**

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of fees awards, and based on the foregoing, I **GRANT IN PART** Petitioner's fees motion. I award a total of **$108,035.92**, reflecting $84,187.06 in fees and $23,848.86 in costs, in the form of a check made jointly payable to Petitioner and Petitioner's counsel, Ms. Lisa Roquemore.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[11]

Any questions may be directed to my law clerk, Madison Atkinson, at madison_atkinson@cfc.uscourts.gov.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.